160 N.W.2d 107 (1968)
Robert B. MELLAND, Warren G. Allen, John Decker, J. R. Bernabucci, Jr., Donald A. Peterson, Roger T. Melroe, and Clinton Ottmar, each for themselves and all others similarly situated, Plaintiffs and Respondents,
v.
Helgi JOHANNESON, as Attorney General for the State of North Dakota, and his successors in office, and Ben Meier, as the Secretary of State of the State of North Dakota, and his successors in office, Defendants and Appellants.
No. 8473.
Supreme Court of North Dakota.
July 3, 1968.
*109 Helgi Johanneson, Atty. Gen., and Paul M. Sand, First Asst. Atty. Gen., Bismarck, attorneys for appellants.
Rausch & Chapman, Bismarck, Degnan, McElroy, Lamb & Camrud, Grand Forks, Hjellum, Weiss, Nerison & Jukkala, Jamestown, and Nilles, Oehlert, Hansen, Selbo & Magill, Fargo, for respondents.
*110 ERICKSTAD, Judge.
The plaintiffs, Robert B. Melland, Warren G. Allen, John Decker, J. R. Bernabucci, Jr., Donald A. Peterson, Roger T. Melroe, and Clinton Ottmar, for themselves and others similarly situated, brought this action for declaratory relief under N.D.C.C. ch. 32-23, and N.D.R.Civ.P. 57. They sought to have N.D.C.C. § 54-03-21 declared illegal as being in violation of the North Dakota and United States Constitutions. In addition, they asked that the Secretary of State be restrained from placing the referral of Senate Bill 232 of the Fortieth Legislative Assembly, which repealed § 54-03-21, on the ballot for consideration by the people at the general election of 1968.
The District Court of Burleigh County found § 54-03-21 unconstitutional, as in violation of §§ 11, 13, 20, 28, 34, 121, and 211 and of Article 40 of the North Dakota Constitution. It also enjoined the Secretary of State from placing the referred measure on the ballot in the general election of 1968 and from expending public moneys relative thereto.
The defendants, Helgi Johanneson, as Attorney General for the State of North Dakota, and Ben Meier, as Secretary of State for the State of North Dakota, have appealed from the judgment of the district court and demand a trial de novo in the Supreme Court.
Section 54-03-21 was adopted as a result of the initiative process in the primary election of June 29, 1954. The 1967 session of the Legislative Assembly passed Senate Bill 232 to repeal § 54-03-21. The Governor vetoed the bill on February 23, 1967, and the Legislative Assembly overrode the veto on February 25, 1967. The bill is now designated as chapter 380 of the 1967 Session Laws.
After the overriding of the veto, petitions to refer Senate Bill 232 to the electorate at the general election to be held November 5, 1968, were circulated and ultimately filed with the Secretary of State. The petitions and the signatures thereto have been declared by the Secretary of State to be adequate, and thus the measure would be placed on the ballot at the general election to be held November 5, 1968, were it not for the district court's injunction.
Mr. Robert B. Melland is a state senator from the 29th District. He took office in January 1967 for a four-year term. He is secretary-treasurer of Melland, Inc., located at Jamestown, which is engaged in selling farm equipment, automobiles, trucks, and appliances. He owns more than five per cent of the stock of that corporation. Melland, Inc., does business with the State and its political subdivisions, which business it acquires through competitive bids. Unless § 54-03-21 is held to be unconstitutional, Mr. Melland believes that he will be forced to resign his position in the legislature, because of the company's interest in doing more than $10,000 of business with the State and each of its political subdivisions.
Dr. Warren G. Allen was a member of the House of Representatives, representing the 5th District at the time this action was initiated. He was elected in 1966 for a two-year term which began in January 1967. He resigned in the latter part of August 1967 so that he would not violate § 54-03-21 and incur the penalties specified therein. He was and is chairman of the Division of Education and Psychology at Minot State College. Although he is paid on a State fiscal year basis, his salary in effect exceeds $10,000 per calendar year.
Mr. John Decker is president of several corporations and a partner in several partnerships which are engaged in the oil jobber and real estate businesses in the Ward County area. He is a senator from the 5th District. His four-year term began in January 1967. He does not do business with the State of North Dakota. He testified that as an elector he was concerned with the law because he thought that his right to be represented by a particular man was denied him when Dr. Allen resigned.
*111 Mr. J. R. Bernabucci, Jr., is a member of the House of Representatives from the 29th District, elected for a two-year term beginning in January 1967. He is president of Coca-Cola Bottling Company of Jamestown. He owns more than five per cent of the stock of the corporation. The corporation sells soft drinks to student associations at dormitories at Valley City State College and at the patients' store at the State Hospital at Jamestown. He does not know if these groups are in fact governmental agencies. He desires a determination of the validity of the law.
Mr. Donald A. Peterson is the principal of Memorial Junior High School of Minot. He states that he voted for Dr. Allen, Dr. Allen also being a member of the teaching profession, and now believes that § 54-03-21 has deprived him of his right to be represented by a person of his choice.
Mr. Roger T. Melroe is a citizen and taxpayer of North Dakota. He is secretary-treasurer and executive vice president in charge of industrial sales of the Melroe Company, a corporation engaged in manufacturing farm and light industrial equipment at Gwinner. He owns about twenty per cent of the company stock. His brother-in-law, Mr. Eugene Dahl, who is a member of the House of Representatives elected from the 26th District, owns fifteen per cent of the company stock. Representative Dahl's wife owns five percent of the stock. The corporation has done business with political subdivisions, which up to this time has not exceeded $10,000 per year with any political subdivision but which may in the future exceed that amount.
Mr. Clinton Ottmar is a lawyer at Jamestown. He has a fifty-fifty partnership with Mr. David E. Nething, who is a state senator from the 29th District. Mr. Ottmar is State's Attorney of Stutsman County, and Senator Nething is Assistant State's Attorney. Mr. Ottmar is also a special assistant to the Attorney General, assigned to advise the State Hospital authorities, for which he receives a salary of $500 per month. His agreement provides that he will receive additional compensation for court and appellate work, pursuant to the fee schedule published by the State Bar Association of North Dakota. The consideration that the partnership receives from the State in a calendar year could therefore exceed $10,000.
The statute complained of reads:
54-03-21. Conflict of interestProhibitionMisdemeanor.No member of the legislative assembly of the state of North Dakota, his spouse, nor a partnership, corporation or association, in which such member or spouse, has an ownership of five per cent or more of the assets, shall perform any work, labor or services, or provide any material, supplies or merchandise, for the state of North Dakota, or any of its subdivisions for a consideration in excess of a total of ten thousand dollars during any calendar year for such work, labor, services, material, supplies and merchandise.
Any person violating the provisions of this section shall be deemed guilty of a misdemeanor, and shall forfeit any consideration received during, or as a result of, or in connection with the violation of this section.
North Dakota Century Code.
The defendants assert first of all that Dr. Allen and the other plaintiffs who are not members of the legislature have no justiciable controversy with the defendants.
Without analyzing in detail the positions of each of the plaintiffs and the arguments of the defendants relative to the standing of each plaintiff, in light of the great importance of the case and in light of N.D.C.C. § 32-23-12, which requires that our declaratory judgment statutes be construed and administered liberally, we find that a justiciable controversy exists between the defendants and each plaintiff. Igoe v. Atlas Ready-Mix, Inc., 134 N.W.2d 511, 518-519 (N.D.1965).
In determining the constitutionality of the statute in question, we start with the *112 well-settled principle of constitutional law, that a law enacted by the legislature is presumed to be constitutional unless it is shown that it is manifestly violative of the organic law. State v. Miller, 129 N.W.2d 356 (N.D.1964), Syllabus 1.
This court, when it first considered the constitutionality of the statute here in question, put it this way:
In considering * * * challenges to the constitutionality of the measure every reasonable presumption in favor of its constitutionality prevails.
Lindberg v. Benson, 70 N.W.2d 42, 45 (N.D.1955).
In the instant case the appellants assert that there is another compelling reason why we should find the statute under consideration to be constitutional, and that is, as they put it, because this court in Lindberg "considered every major point raised in the present case." Thus, they say, the doctrine of stare decisis should apply to prevent this court from reconsidering the issues raised in this case.
Notwithstanding the importance of applying the doctrine of stare decisis generally, because of the significance of the issues in this case we shall consider them as they were raised by the plaintiffs and decided by the trial court.
In this respect it is interesting that in 1966, after nearly seventy years of following the rule of stare decisis enunciated in London Street Tramways Company v. London County Council, [1898] A.C. 375, 379, 381, the Lord Chancellor of England issued a statement announcing a modification of the rule. See: Birnbaum, Stare Decisis vs. Judicial Activism: Nothing Succeeds Like Success, 54 A.B.A.J. 482 (1968).
As long ago as 1943 this court, speaking through Judge William L. Nuessle, said:
The rule of stare decisis is a rule of policy grounded on the theory that when a legal principle is accepted and established, rights may accrue under it and security and certainty require that the principle be recognized and followed thereafter even though it later be found to be not legally sound. To a certain extent this is true. But the rule is not sacrosanct. Whether or not a holding shall be adhered to or modified or overruled, is a question within the discretion of the court under the circumstances of the case under consideration. [citation omitted]
Otter Tail Power Co. v. Von Bank, 72 N.D. 497, 8 N.W.2d 599, 607, 145 A.L.R. 1343 (1943).
In a very recent decision we exercised that discretion and overruled a holding of this court of 37 years' standing. Iverson v. Lancaster, 158 N.W.2d 507 (N.D.1968).
We are then merely affirming the court's right and duty to exercise its discretion in considering in this case some of the constitutional issues raised and determined in Lindberg.
The plaintiffs contended, and the trial court agreed, that § 54-03-21 violates §§ 11, 13, and 20 of the North Dakota Constitution and § 1 of the fourteenth amendment to the United States Constitution.
The sections contended to be violated read:
Section 11. All laws of a general nature shall have a uniform operation.
* * * * * *
Section 13. In criminal prosecutions in any court whatever, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf; and to appear and defend in person and with counsel. No person shall be twice put in jeopardy for the same offense, nor be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law.
* * * * * *
Section 20. No special privileges or immunities shall ever be granted which *113 may not be altered, revoked or repealed by the legislative assembly; nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens.
N.D.Const. art. I.
Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
U.S.Const. amend. XIV.
What the plaintiffs seem to be contending here is equivalent to what the plaintiffs were contending in Lindberg, and that is, that the classification created by the initiated measure deprived them and others similarly situated of their property without due process of law and denied them equal protection of the laws. They concede that none of the constitutional protections cited inhibit classifications as such, as long as the classifications meet certain standards. They refer us to the following:
Sections 11 and 20 of the State Constitution do not nor does the Fourteenth Amendment to the Constitution of the United States prohibit or prevent classification provided such classification is reasonable for the purpose of legislation, is based on proper and justifiable distinctions considering the purpose of the law, is not clearly arbitrary, and is not a subterfuge to shield one class or to burden another or to oppress unlawfully in its administration. * * *
F. W. Woolworth Co. v. Gray, 77 N.D. 757, 46 N.W.2d 295, 309 (1951).
The plaintiffs assert that our first determination must be whether there is a classification, and second, if there is a classification, whether it is of the permissible type. They allege that this court, in Lindberg, said that there was no classification and that this is what the defendants are now arguing.
They point out that in this case the district court found, not only that there was classification within a class, but that the said classification was arbitrary, unreasonable, and unwarranted; and they note that the dissenting opinion in Lindberg was to the same effect.
In Lindberg, a 3 to 2 decision, the majority of the court, speaking through Chief Justice Thomas J. Burke, said:
It is true that "* * * A proper classification for legislative purposes must embrace all who naturally belong to the class * * *." Fountain Park Co. v. Hensler, 199 Ind. 95, 155 N.E. 465, 50 A. L.R. 1518, and "Legislation cannot arbitrarily divide a class into two parts and constitute a different rule of law governing each of the parts", State v. Cullum, 110 Conn. 291, 147 A. 804, 806, but the legislation under consideration does not violate these principles. The class named is a single undivided class. It consists of all members of the Legislature. There is a single rule of law governing the entire class. No member of the class may contract with the state or any of its subdivisions in a sum in excess of $10,000 a year.
Lindberg v. Benson, supra, 70 N.W.2d 47.
Notwithstanding the great respect which we have for the legal writings of Chief Justice Burke and those who joined him in the majority opinion in Lindberg, we are of the view that § 54-03-21 does classify. The question here resolves itself into whether the classifications are reasonably necessary to effect the purposes of the law, which is otherwise within the province of *114 the legislature (or in the instant case within the province of the people) to enact. In Miller we said:
Where a classification is reasonably necessary to effect the purposes of a law which is otherwise within the province of the Legislature to enact, the classification will not render the law repugnant to the Constitution.
State v. Miller, supra, Syllabus 5.
The plaintiffs say that there can be no quarrel with the purpose of the law "the elimination of corruption." Perhaps it would be more fair and correct to say that the purpose of the statute is to prevent one's personal interests from interfering with one's duty as a legislator to provide for the public interest. This latter purpose is consistent with the title the code revisors have given the law, "Conflict of InterestProhibitionMisdemeanor." In any case, the purposes are similar and proper.
Let us get back to the question of whether the classifications are reasonably necessary to effect the purposes of the law.
The plaintiffs point out many ways in which they believe the statute discriminates unreasonably between one class of persons and another. Of those, we shall discuss herein the one we consider to be crucial; that is, that the statute distinguishes between legislators who render services or do business with the State or its subdivisions, depending on whether they render services or do business in excess of or less than $10,000 in any calendar year. They state that this feature in itself makes the law unconstitutional, being an unreasonable classification.
In discussing this statute in Lindberg, Chief Justice Burke, speaking for the majority, said:
By enacting this initiated measure the people have attempted to remove from the legislators temptation to venality in the exercise of their legislative functions. Many states have constitutional or legislative provisions which are similar in nature and which have remained in force unchallenged for many years. Section 11, Chapter 121, Revised Statutes of Maine, 1903; Article V, Section 30, Constitution of Montana; Article 3, Section 12, Constitution of South Dakota; Section 365, Revised Statutes of Idaho, 1887; Article 3, Section 16, Constitution of Nebraska; Article IV, Section 15, Constitution of Illinois; Ill.Rev.Statutes 1951, Chapter 127, par. 75. * * *
Lindberg v. Benson, supra, 70 N.W.2d 46.
The cited statutes and constitutional provisions, as of the time of Lindberg and, in the case of those which have been amended or replaced, in their current language, appear in the note at the end of this opinion.
An analysis of those statutes and constitutional provisions indicates that none of them contains a dollar limitation similar to that of our statute which permits the rendering of services or the doing of business below a certain figure but prohibits it above that figure. In other words, none of those statutes or constitutional provisions distinguishes between legislators who, as employees of the State or its subdivisions, earn higher salaries and those who earn lower salaries, nor does any distinguish between those legislators who do more business with the State or its subdivisions and those who do less. They do not permit what our statute permitsthe privilege of benefiting pecuniarily to a certain extent but no more from the influence one might conceivably exercise through his membership in the legislature. In light of those differences in respect to this feature of our statute, it is immaterial that those statutory and constitutional provisions have remained in force unchallenged for many years.
In Lindberg the majority of the court disposed of a similar complaint by these words:
Where size is a proper index to an evil, a legislature may discriminate between the great and the small. Engel v. O'Malley, *115 219 U.S. 128, 31 S.Ct. 190, 55 L.Ed. 128; Heath & Milligan Mfg. Co. v. Worst, 207 U.S. 338, 28 S.Ct. 114, 52 L. Ed. 236. In this case size is a proper index. In the ordinary course of events the amount of profit in any transaction is proportionate to the size of the transaction since it is customary for businessmen to compute profits at a certain percentage of the gross. The greater the opportunity for profit, the greater is the temptation to venal acts on the part of the legislators and it was for the people in the exercise of the legislative power, to decide at what particular point the size of a transaction might impair the effectiveness of a legislator's service. Exactly the same principle of law and the same reasoning applies to the provision of the initiated measure which bars a corporation, in which a member of the Legislature owns five percent or more of the assets, from doing business with the State or its subdivisions. * * *
Lindberg v. Benson, supra, 70 N.W.2d 47.
We disagree with this view. In the instant case, particularly as the issue relates to the $10,000 limit, size is not the index of the evil. The evil is that a legislator might permit his vote to be influenced by personal interests; its index is the existence of the personal interest, not the amount of money involved. How can it be said that a legislator-employee of the State or one of its subdivisions, if he were susceptible to such an influence at all, would be any less influenced if his salary were less than $10,000 than if it were more than $10,000, if that salary depended upon the passage of an appropriation measure? The same question would apply to the legislator-businessman.
It is therefore our view that this feature of the statute constitutes an arbitrary classification, a classification that cannot be supported by reason, and that this alone must cause the statute to fall as being in contravention of §§ 11 and 20 of the North Dakota Constitution and § 1 of the fourteenth amendment to the United States Constitution as a denial of the equal protection of the laws.
There is another feature of the statute, however, which we believe to be even more discriminatory, and that is the feature which distinguishes between a stockholder-legislator and his spouse and an employee-legislator and his spouse. This distinction lies in permitting a partnership, corporation, or association which employs a legislator to do any amount of business with the State or its subdivisions but prevents a similar partnership, corporation, or association from doing more than $10,000 business with the State or its subdivisions if any of its members or stockholders or their spouses owning five per cent or more of its assets serves in the legislature. This is so, not-withstanding that the employee's salary or his spouse's salary from the partnership, corporation, or association might be tied directly or indirectly to the business done with the State or its subdivisions by the partnership, corporation, or association. This feature also constitutes a denial of the equal protection of the laws.
We refer those who are interested in studying the ramifications of conflict-of-interest legislation to U.S.C.A. tit. 18, ch. 11, particularly §§ 201, 202, 203, 204, 205, 210, 211, and 218. A study of those sections of the federal law will disclose that conflict-of-interest legislation involves much more than the mere prohibition of doing business with the State or its subdivisions.
It is important to note that although we have herein determined that the statute under consideration in this case, N.D.C.C. § 54-03-21, is unconstitutional, there still exists a constitutional safeguard in § 43 of the North Dakota Constitution, which was intended by its framers to prohibit a legislator from voting on any bill proposed or pending before the Legislative Assembly if he has a personal or private interest in it unless authorized to do so by the other members of his house.
*116 That section reads:
Section 43. Any member who has a personal or private interest in any measure or bill proposed or pending before the legislative assembly, shall disclose the fact to the house of which he is a member, and shall not vote thereon without the consent of the house.
N.D.Const. art. II.
See Judge Nels G. Johnson's dissent in Lindberg v. Benson, supra, 70 N.W.2d 42, 48.
If § 43 of the Constitution is not being enforced, it is certain that it could be enforced under the power of each house of the legislature to judge the qualifications of its own members. N.D.Const. art. II, § 47.
In closing, we think it is particularly important to point out that since § 54-03-21 was first enacted and tested in this court, the legislature has established the Department of Accounts and Purchases and has specifically given its director the duty, power, and responsibility of operating a centralized purchasing service. N.D.C.C. § 54-44-04(21). Under administrative practice established by the director, it is believed that the great majority of purchases processed by the department are awarded through contracts to the lowest and best bidders after the department has invited and received sealed bids. It may be that for more lasting public protection, the bidding process which is now required through administrative practice should be required by law.
Section 54-44-09 is also pertinent. It reads:
54-44-09. Supplies for institutions under control of the department of accounts and purchases.The department of accounts and purchases shall make all purchases of goods and materials on behalf of the various state institutions, departments and agencies in accordance with the standards and specifications of the United States bureau of standards.
North Dakota Century Code.
Subsequent also to the rendition of our previous decision was the passage of the legislation requiring the Board of Administration to make its purchases through the Department of Accounts and Purchases. See: N.D.C.C. §§ 54-23-30 and 54-23-31.
In addition, the Fortieth Session of the Legislative Assembly, the same session that repealed § 54-03-21, passed Senate Bill 191, which, as now contained in the Century Code, reads:
44-08-01.1. Bids to be sealedDesignation of time and place for opening. Notwithstanding any other provisions of the North Dakota Century Code, the governing bodies of the political subdivisions of the state of North Dakota shall accept only sealed bids, whenever by law or administrative decision they are required to call for, advertise, or solicit bids for the purchase of personal property and equipment. Whenever a political subdivision of this state calls for, advertises, or solicits sealed bids it shall designate a time and place for the opening of such bids. If all of the bids are not rejected, the purchase shall be made from the bidder submitting the lowest and best bid meeting or exceeding the specifications called for.
North Dakota Century Code.
The statutes referred to are in addition to the many other statutes affecting almost all governmental contracts, with their varying provisions for competitive bidding and awarding of contracts to the lowest and best or responsible bidders.
These newer statutes serve, not only to further protect the public interest, but, in the instant case, to obviate the reasoning which may have previously supported this court in sustaining the highly discriminatory classifications which we have today found unreasonable and thus invidious.
*117 For the reasons stated we affirm the judgment of the trial court in its holding that § 54-03-21 is unconstitutional. We also uphold that part of the trial court's judgment which enjoins the Secretary of State from placing the referred measure, Senate Bill 232 of the Fortieth Legislative Assembly, on the general election ballot.
TEIGEN, C. J., and PAULSON, KNUDSON, and STRUTZ, JJ., concur.
NOTE: The statutes and constitutional provisions cited in Lindberg v. Benson, 70 N.W.2d 42 (N.D.1955), referred to in the body of this opinion follow. In the case of those which have been amended or replaced, their current wording is also given.
Sec. 11. No trustee, superintendent, treasurer or other person holding a place of trust in any state office or public institution of the state, shall be pecuniarily interested directly or indirectly in any contracts made in behalf of the state or of the institution in which he holds such place of trust, and any contract made in violation hereof is void; and if such officer or person receives any drawbacks, presents, gratuities or secret discounts to his own use on account of such contracts, or from the profits in any materials, supplies or labor, furnished or done for the state or such institution, he shall be punished by imprisonment for not more than a year, or by fine not exceeding five hundred dollars.
Maine Rev.Stats.1903, ch. 121.
§ 3104. Conflicts of interest; purchases by the State
No trustee, superintendent, treasurer or other person holding a place of trust in any state office or public institution of the State, or any officer of a quasi-municipal corporation shall be pecuniarily interested directly or indirectly in any contracts made in behalf of the State or of the institution or of the quasi-municipal corporation in which he holds such place of trust, and any contract made in violation hereof is void. If such officer or person receives any drawbacks, presents, gratuities or secret discounts to his own use on account of such contracts, or from the profits in any materials, supplies or labor furnished or done for the State or such institution or such quasi-municipal corporation, he shall be punished by a fine of not more than $500 or by imprisonment for not more than 11 months. This section shall not apply to purchases of the State by the Governor and Council under authority of Title 1, section 814.
In the absence of actual fraud, no officer of a quasi-municipal corporation shall be deemed to be pecuniarily interested directly or indirectly in any contracts made in behalf of the quasi-municipal corporation of which he is an officer merely because he is an officer, employee or stockholder of a private corporation contracting with the quasi-municipal corporation, unless such officer of a quasi-municipal corporation is directly or indirectly the owner of at least 10% of the stock of the private corporation.
Maine Rev.Stats.Ann. tit. 17 (Supp.1967).
Sec. 30. All stationery, printing, paper, fuel and lights used in the legislative and other departments of government, shall be furnished, and the printing, and binding and distribution of the laws, journals, and department reports and other printing and binding, and the repairing and furnishing the halls and rooms used for the meeting of the legislative assembly, and its committees shall be performed under contract, to be given to the lowest responsible bidder below such maximum price and under such regulations as may be prescribed by law. No member or officer of any department of the government shall be in any way interested in any such contract; and all such contracts shall be subject to the approval of the governor and state treasurer.
Mont.Const. art. V.
§ 12. No member of the legislature shall, during the term for which he was elected, be appointed or elected to any civil office in the state which shall have been created, or the emoluments of which shall have been *118 increased during the term for which he was elected, nor shall any member receive any civil appointment from the governor, the governor and senate, or from the legislature during the term for which he shall have been elected, and all such appointments and all votes given for any such members for any such office or appointment shall be void; nor shall any member of the legislature during the term for which he shall have been elected, or within one year thereafter, be interested, directly or indirectly, in any contract with the state or any county thereof, authorized by any law passed during the term for which he shall have been elected.
S.D.Const. art. III.
Section 365. Members of the Legislature, Territorial county, city, district and precinct officers, must not be interested in any contract made by them in their official capacity, or by any body or board of which they are members.
Idaho Rev.Stats.1887, ch. XVII.
59-201. Officers not to be interested in contracts.Members of the legislature, state, county, city, district and precinct officers, must not be interested in any contract made by them in their official capacity, or by any body or board of which they are members.
Idaho Code 1947.
Sec. 16. Members not to be appointed to another office, nor be interested in contracts. No person elected or appointed to the Legislature shall receive any civil appointment to a state office during the term for which he has been elected or appointed, and all such appointments shall be void; nor shall any member of the Legislature, or any state officer be interested, either directly or indirectly in any contract, with the state or any county or municipality thereof, authorized by any law enacted during the term for which he shall have been elected or appointed, or within one year after the expiration of such term.
Neb.Const. art. III.
§ 15. No person elected to the general assembly shall receive any civil appointment within this state from the governor, the governor and senate, or from the general assembly, during the term for which he shall have been elected; and all such appointments and all votes given for any such members for any such office or appointment, shall be void; nor shall any member of the general assembly be interested, either directly or indirectly, in any contract with the state, or any county thereof, authorized by any law passed during the term for which he shall have been elected, or within one year after the expiration thereof.
Ill.Const. art. IV.
75. No contract with state officers, etc.] § 12. No contract shall be let to any person holding any state office in this state or a seat in the General Assembly, or to any person employed in any of the offices of the state government, or the wife of a state officer, member of the General Assembly, or employee as aforesaid, nor shall any state officer, member of the General Assembly, or wife of employee as aforesaid, become, directly or indirectly, interested in any such contract, under penalty of forfeiting such contract and being fined not exceeding one thousand dollars.
S.H.A. ch. 127 § 75; J.A. 126.261.
Ill.Rev.Stats.1945 (State Bar Assn. ed.) ch. 127 [Ill.Rev.Stats.1951, referred to in Lindberg, is not available to us. The above wording is the same as that of Ill.Rev.Stats. 1953 (Smith-Hurd Ann. ed.), and we find nothing in the Illinois session laws to indicate that it was changed in the interim.]
132.11-1. Contracts with state officers or employeesProhibitionExceptionsPenalty.] § 11.1. It is unlawful for any person holding an elective office in this State, holding a seat in the General Assembly, or appointed to or employed in any of the offices of State government, or who is an officer or employee of the Illinois *119 Building Authority or the Illinois Toll Highway Commission, or who is the wife, husband or minor child of any such person to have or acquire any contract, or any direct pecuniary interest in any contract therein, whether for stationery, printing, paper or for any services, materials or supplies, which will be wholly or partially satisfied by the payment of funds appropriated by the General Assembly of the State of Illinois or in any contract of the Illinois Building Authority or the Illinois Toll Highway Commission. Payments made for a public aid recipient are not payments pursuant to a contract with the State within the meaning of this Section.
It is unlawful for any firm, partnership, association or corporation in which any such person is entitled to receive more than 7½% of the total distributable income to have or acquire any such contract or direct pecuniary interest therein.
It is unlawful for any firm, partnership, association or corporation in which any such person together with his spouse or minor children is entitled to receive more than 15%, in the aggregate, of the total distributable income to have or acquire any such contract or direct pecuniary interest therein.
Nothing in this Section invalidates the provisions of any bond or other security heretofore or hereafter offered for sale or sold by or for the State of Illinois.
This Section does not affect the validity of any contract made between the State and an officer of the State or member of the General Assembly, his spouse, minor child or any combination of such persons, if that contract was in existence before his election as such officer or member. Such a contract is void, however, if it cannot be completed within 6 months after such officer or member takes office.
This Section does not apply to a contract for personal services (1) as a teacher or school administrator between a member of the General Assembly or his spouse and any school district, junior college district, the University of Illinois, Southern Illinois University or any institution under the control of the Board of Governors of State Colleges and Universities, or (2) of a wholly ministerial character including but not limited to services as a laborer, clerk, typist, stenographer, page, bookkeeper, receptionist or telephone switchboard operator, made by the spouse or minor child of an elective State officer or of a member of the General Assembly.
Any person convicted of a violation of this Section shall be fined not more than $2,500. As amended by act approved Aug. 21, 1967. L. 1967, p. 3319, S.B. No. 505. Effective Jan. 1, 1968.
Section added: L. 1967, p. 308, S.B. No. 349.

* * * * * *
132.11-3. State employeesContract negotiations with future private employer Penalty.] § 11.3. Except as provided in Section 11.5,1 it is unlawful for any person employed in or on a continual contractual relationship with any of the offices of State government to participate in contract negotiations on behalf of that office with any firm, partnership, association or corporation with whom that person has a contract for future employment or is negotiating concerning possible future employment.
1 Chapter 127, § 132.11-5.
Any person violating this Section shall be fined not more than $2,500. Added by act approved Aug. 21, 1967. L. 1967, p. 3319, S.B. No. 505. Effective Jan. 1, 1968.
132.11-4. Pecuniary interest of relativesDisclosurePenalties.] § 11.4. Any person participating in the making of a contract, or who enters into a contract, on behalf of an office of State government with the knowledge that his spouse, child, parent, brother or sister is entitled to receive more than 7½% of the total distributable income, or in which that child, parent, brother or sister, together with his spouse or minor children, is entitled to receive *120 more than 15%, in the aggregate, of the total distributable income of the other contracting party, shall immediately file a written statement setting out the facts of the transaction. Such statement shall be filed with the administrative head of that office and be kept available for public inspection. A person failing to make a timely filing of such a statement or filing a false statement shall be fined not more than $2,500.
Any such contract is contrary to public policy and may be voided at the option of the State unless it is shown to be in the best interests of the State. Moreover, if fraud or substantial monetary harm to the State results from the nepotic element of such transaction, the government officer or employee involved in such element shall be guilty of a felony, punishable by fine not to exceed $5,000 or imprisonment in a penal institution other than the penitentiary for a term not to exceed one year, or both. Added by act approved Aug. 21, 1967. L. 1967, p. 3319, S.B. No. 505. Effective Jan. 1, 1968.
132.11-5. Exemption from operation of sections 132.11-1 and 132.11-3Powers of governorRequisites.] § 11.5. The Governor may exempt named individuals from the prohibitions of Section 11.1 and 11.31 when, in his judgment, the public interest in having such an individual in the service of the State outweighs the public policy evidenced in those Sections. Such an exemption is not effective, however, unless the Governor files with the Secretary of State a statement naming the individual, setting forth all the pertinent facts which would make those Sections applicable, setting forth the reasons for the exemption and declaring that the individual is exempted from those Sections. Added by act approved Aug. 21, 1967. L. 1967, p. 3319, S.B. No. 505. Effective Jan. 1, 1968.
1 Chapter 127, §§ 132.11-1, 132.11-3.
Ill.Rev.Stat. 1967 (State Bar Assn. ed.) ch. 127.