447 P.2d 376

W. Hughes BROCKBANK and Fawn J. Brockbank, individually and as a copartnership doing business as Magic Chemical Company, Plaintiffs,

v.

Calvin L. RAMPTON, Clyde L. Miller, Phil L. Hansen, Herbert F. Smart, and J. Douglas Christiansen, Defendants, Utah Legislative Conference, Amicus Curiae.

No. 11373.

Supreme Court of Utah.

Nov. 20, 1968.

**20**

---

Thorpe Waddingham, of Waddingham & Crafts, Delta, Kent Shearer, of Neslen & Mock, Salt Lake City, for plaintiffs.

Wm. D. Oswald, Salt Lake City, for amicus curiae.

Phil L. Hansen, Atty. Gen., Robert J. Stansfield, Asst. Atty. Gen., Salt Lake City, for defendants.

TUCKETT, Justice:

The defendant Calvin L. Rampton is the Governor of the State of Utah, Clyde L. Miller is the Secretary of State, and Phil L. Hansen is the Attorney General, and these defendants comprise the Board of Examiners, which Board has general powers to examine claims against the State. Herbert F. Smart is the Director of Finance, and J. Douglas Christiansen is the Purchasing Agent for the State. The plaintiffs, W. Hughes Brockbank and his wife, Fawn J. Brockbank, are copartners doing business as Magic Chemical Company. The firm is engaged in the sale of janitorial supplies and related products. The plaintiff W. Hughes Brockbank is a member of the Utah State Senate and as such participated in the regular 1967 session of the Legislature. Senator Brockbank was a member of the Joint Appropriations Committee during the session and voted for the general appropriation bill recommended by the Committee.

On or about September 4, 1968, the plaintiff copartnership submitted a bid to the State Purchasing Department for the sale of certain janitorial supplies for use by the State. The bid was submitted pursuant to invitation by the Purchasing Department, and the bid submitted by the plaintiffs was the low bid. The bid was rejected by the Purchasing Department upon the ground that Senator Brockbank's interest in the plaintiff copartnership and his participation in the Legislature created a conflict of interest which prohibited the State Purchasing Department from contracting with him. The plaintiffs filed these proceedings in this court seeking to compel the defendants to receive and to consider bids submitted by the plaintiffs for the sale of supplies needed by the State. It is the plaintiffs' contention that the policy of the defendants is an unlawful restriction upon the rights of the plaintiffs to contract with the State of Utah.

The action of the State Purchasing Department in rejecting the bid of the plaintiffs stemmed from an opinion of the Attorney General, which concluded that a member of the Legislature was a public officer of the State and as such is subject to the conflict of interest doctrine which prohibits such officer from contracting with the State.

A survey of the laws dealing with conflicts of interest leads the court to a conclusion that the problem is of great complexity arising in some degree from the varied treatment of the problem by the several states. It would appear that there is little uniformity in either the constitutional or statutory provisions dealing with the problem.[1] Our concern in this case is an interpretation of the constitutional provision and the statutes dealing therewith. The constitutional provision dealing with the problem is Article XIII, Section 8, of the Utah Constitution, which reads as follows:

> The making of profit out of public monies, or using the same for any purpose not authorized by law, by any public officer, shall be deemed a felony, and shall be punished as provided by law, but part of such punishment shall be disqualification to hold public office.

The above provision of the Constitution was implemented by the Legislature in Section 76-28-61, Utah Code Annotated 1953, which reads:

> The making of profit out of public moneys, or using the same for any purpose not authorized by law, by any public officer, is a felony, and any such officer, in addition to the punishment provided by law, shall be disqualified to hold public office.

Prior to the drafting of the Utah Constitution it was a common practice for state treasurers and other custodians of public monies in other states to deposit the same in banks at interest and to treat the earnings from the deposits as their private funds. This practice was based upon the theory that the custodians of public monies were charged with the sole duty of safeguarding the funds and returning the same to the state when required. It would appear that the provision of the Utah Constitution above referred to was aimed at the problem of preventing a custodian of public funds from making a profit therefrom. It would seem that the statute is likewise directed to the same problem. The provisions of particular constitutions and statutes have been dealt with in decisions by courts construing similar phraseology differently, resulting in numerous disharmonious decisions.

█ We deem it best to decide the instant case upon the facts presented to us without attempting to reconcile the conflicting decisions from other jurisdictions. The facts in this case would indicate that the plaintiffs, having submitted a low bid in competition with other bidders for the sale of the products mentioned to the State, would have resulted in an arm's length transaction if accepted by the State. It is quite apparent that the proposed transaction was

1. 76 Harvard Law Rev. 1209; 107 Pennsylvania Law Rev. 985; 58 Columbia Law Rev. 157; 47 Virginia Law Rev. 1035.

not influenced nor governed by Senator Brockbank's holding public office. The facts reveal no interest which conflicted with the Senator's public duty. We are of the opinion that the facts in this case do not show a conflict of interest situation which should have precluded the acceptance of the plaintiffs' bid.

The constitutional provision of the Utah Constitution referred to above was before this court in the case of Raymond v. Larsen[2] wherein the court was of the opinion that the provisions of the section were intended to apply to fiduciary situations concerned with the handling of public property and public funds. We see no reason to depart from the ruling in that case. Counsel have referred us to the North Dakota case of Lindberg v. Benson,[3] but we note that that case was overruled by the more recent case of Melland v. Johanneson.[4]

As stated above, we can only decide this case upon the facts presented to the court, and it is not our intention to speak in respect to other cases which might arise under the conflict of interest doctrine. Nor do we intend to interfere with the inherent power of the legislative body to provide rules of conduct for its own members in this and other areas.

An order is granted as prayed for. No costs awarded.

CROCKETT, C. J., and CALLISTER, and HENRIOD, JJ., concur.

ELLET, Justice (concurring and dissenting).

I agree with the opinion, but not with the purported order made, which I believe to be meaningless to the defendants. To *grant the order as prayed for* is merely to grant what has already been granted. The prayer of the complaint was:

WHEREFORE, Plaintiffs pray as follows:

A. That an Order To Show Cause issue * * * commanding the Defendants to show cause * * * why Defendants should not be commanded to receive and consider bids and offers to sell materials to the State of Utah from Plaintiffs * * * on a parity with those of other business associations * * in which a Legislator is not an owner, partner or other interest holder, * * *.

B. For such other relief as may be proper in the premises.

This court did issue an order to show cause as requested. To conclude this matter I think we should now make the following order:

The defendants are ordered to consider the bid made by plaintiffs on a parity with those made by all other bidders.

2. 11 Utah 2d 371, 359 P.2d 1048.
3. 70 N.W.2d 42 (N.D.1955).

4. 160 N.W.2d 107 (N.D.1968).